CITY OF LAUREL *v.* INGRAM.[*]

(Division B. Dec. 12, 1927. Suggestion of Error Overruled Jan. 9, 1928.)

[114 So. 881. No. 26731.]

1. MUNICIPAL CORPORATIONS. *Scavenger held "independent contractor," and city not liable for dumping garbage on land.*

Where city employed city scavenger to remove and dispose of garbage and fixed charges to be paid for his services by property

owners and by city, but retained no other control over him, place of dumping garbage being left to him, he was an "independent contractor," and city was not liable for damages for his dumping garbage on plaintiff's land.

2. MUNICIPAL CORPORATIONS. *Knowledge of authorities that scavenger, independent contractor, was trespassing did not make city liable.*

   Knowledge on part of city authorities that city scavenger, an independent contractor, was trespassing on plaintiff's property by dumping garbage thereon, did not make city liable.

3. MUNICIPAL CORPORATIONS. *That mayor undertook to stop trespassing by scavenger, independent contractor, did not make city liable.*

   That mayor undertook to stop trespassing by city scavenger, an independent contractor, on plaintiff's land, by dumping garbage thereon, when plaintiff made complaint to mayor, did not make city liable for damages, since mayor could not bind city in that manner; he having no right to direct scavenger where to dump garbage.

*Corpus Juris-Cyc. References: Municipal Corporations, 43CJ, p. 946, n. 33; p. 948, n. 58. Employment of independent contractor as affecting liability for injury in disposal of garbage, see annotation in 65 L. R. A. pp. 469, 488; 23 A. L. R. 1078.

APPEAL from circuit court of Jones county, Second district.

HON. R. S. HALL, Judge.

Action by D. S. Ingram against the city of Laurel. From a judgment for plaintiff, defendant appeals. Reversed and judgment rendered.

*W. S. Welch, Ellis B. Cooper, Roy P. Noble* and *Jas. T. Welch,* for appellant.

Appellant requested and was refused the following instruction: "The court instructs the jury to find for the defendant." The refusal was error. The act complained of, the trespass, was not that of the city of Laurel but was the trespass of George Lane who was an independent contractor. The court will observe that this fact was specially pleaded. Notice under the general issue was

given and no matter in confession and avoidance or in any other way was pleaded by appellee.

Appellant contracts for a scavenger for the protection of the health and for the convenience of the people. The prices were fixed by the contract so that the people would not be overcharged for this service. The property own-ers themselves pay for this service.

It is very true that this witness says when he finds something owned by nobody he moves it and the city pays him for it. It is true he hauls for the city. But when he works for the city he is paid just as the individual pays him.

Under the holding of this court in *Gulfport* v. *Shep-perd,* 116 Miss. 439, 77 So. 192, the negro, George Lane, was an independent contractor and, conceding for argu-ment's sake that his actions were improper and wrongful, the appellant is not liable for his conduct. The court not only refused the peremptory instruction on this ground but it refused the submission of this question to the jury.

*Collins & Collins,* for appellee.

Appellee's declaration is in two counts, the first claiming damages for the dumping of the garbage on the land of appellee by the said city of Laurel, and the second count claiming damage for the city of Laurel appropriating his property to public use without com-pensation.

The testimony shows that the city of Laurel employed a negro named George Lane several years ago, not only to take the garbage for private owners at a price fixed by the city, but to haul the garbage from the city property for which the city paid him and to pick up dead animals, the owners of which could not be found, and other filth and garbage in the city of Laurel, and carry it to the dumping ground. The testimony shows that George Lane was working for the city all this time and was re-

ceiving pay from the city for his work. It further shows that he worked for individuals and received pay also from them. The city of Laurel, through its mayor, exercised control over the said George Lane as to the place at which he dumped the garbage and the city of Laurel has assumed the responsibility for taking care of said garbage.

. The mayor and commissioners of the city of Laurel knew all the time that this negro, George Lane, was carrying this garbage to this dumping ground. Three things we see then established: First, that the city of Laurel employed George Lane to carry off its garbage and everybody else's garbage; second, that the city of Laurel fixed the prices and controlled George Lane with reference to cleaning up the city of Laurel; third, that the city of Laurel knew that it was placing its garbage upon Ingram's land, and that without his consent.

It was amply shown, by the testimony, that the land was covered with all kinds of garbage, junk, dead animals, and other kinds of filth. The jury were carried to the land and there viewed the situation themselves. The city knew that he was using Ingram's land for this purpose and yet they continued George Lane in their employ all of this time. They ratified and adopted his acts.

When the city of Laurel assumed the responsibility of making this disposition of the garbage of the city, they also assumed the further duty and obligation of providing a place for such garbage and seeing to it that the garbage was placed thereon. 19 R. C. L. 1140.

The city has done work or assumed to do work that has caused an injury and which they knew could not be done without causing an injury to someone. In this case they happened to know just how the work was being done and they happened to know who was being damaged.

In the *Shepperd case,* 116 Miss. 439, 77 So. 192, there was no contention that Currie performed any duty for the city out of which any damage grew, while in this case, the testimony amply shows that George Lane was

continuously working for the city under the direct control of the city authorities with reference to the place upon which he dumped the garbage, and otherwise.

This suit is not based alone upon the proposition of *respondeat superior.* But it is further based upon the theory that private property may not be taken for public use without just compensation. And further that the city is guilty of maintaining a nuisance on appellee's land.

In *Stephenville* v. *Bowen,* 29 Tex. Civ. App. 384, 68 S. W. 833, it was held that a municipality was liable for the act of a city scavenger in repeatedly depositing refuse on a lot adjoining that of the plaintiffs, to the damage of the plaintiffs, instead of on a dumping ground provided by the city beyond the corporate limits. In *San Antonio* v. *Macjey,* 14 Tex. Civ. App. 210, 36 S. W. 760, on rehearing in 22 Tex. the city was held liable for the dumping of refuse on the plaintiff's land, although the act may not have amounted to a nuisance.

In *Flannagan* v. *Bloomington,* 156 Ill. App. 162, it was held that a municipality was liable for the act of a cartman in its employ in dumping garbage and refuse on a lot within the city limits, to the damage of the plaintiff.

Under section 5834, Hemingway's Code, section 3337, Code of 1906, a city has the authority to exercise eminent domain rights in taking property for such uses as the one under consideration.

Section 5835, Hemingway's Code, gives a municipality general authority to maintain sewers, open up and lay out same, and section 5816, Hemingway's Code, section 3391, Code of 1906, gives the city the power to compel and regulate the removal of garbage and filth beyond the corporate limits and to prevent, remove, and abate nuisances and other "cognate matter."

Since the city has this authority and since it has assumed the responsibility of regulating this matter, it is liable as for the maintenance of a nuisance. *People* v. *Albany,* 11 Wend. 539, 27 Am. Dec. 95;

*State* v. *Shelbyville,* 4 Sneed 176; *Franklin Wharf Co.* v. *Portland,* 67 Maine, 462, 4 Am. Rep. 1; *Kiley* v. *City of Kansas,* 69 Mo. 102, 33 Am. Rep. 491; *Paiker* v. *Macon,* 39 Ga. 735; *Mooty* v. *Danbury,* 45 Conn. 550; *Brown* v. *Mayor of New York,* 3 Barb. 254; *Hunt* v. *Mayor of Albany,* 9 Wend. 571; and if it permits a public nuisance to exist on property. *St. John* v. *Mayor,* 3 Bosw. 263; *Harper* v. *Milwaukee,* 30 Wis. 365; *Cohen* v. *Mayor of New York,* 113 N. Y. 532, 10 Am. St. Rep. 506; *Stanley* v. *Davenport,* 54 Iowa, 463; *McDonald* v. *Newark,* 43 N. J. Eq. 142.

ANDERSON, J., delivered the opinion of the court.

Appellee sued appellant for damages alleged to have been done his land by appellant having used it as a dumping ground for its city garbage, and recovered a judgment in the sum of eight hundred fifty dollars, from which judgment appellant prosecutes this appeal.

Appellant contends that the court erred in refusing to direct a verdict in its favor. We think the material facts in the case are undisputed.

Appellant employed a city scavenger to remove and dispose of the garbage and other refuse matter, including dead animals, from the residence and business property of the city, as well as the city garbage and refuse proper. Appellant fixed the fees and charges which the city scavenger was to receive for his services. The removal of the garbage including dead animals from the residence and business property in the city was paid for direct by the owner of property to the city scavenger, while the city garbage proper, including dead animals for which no owner could be found, was paid for at the price fixed by the city itself. The mayor, and perhaps all the other officers of the city, knew that the city scavenger was dumping all garbage from the city, including dead animals, on appellee's property. But appellant neither directed that this be done, nor retained any con-

trol over the city scavenger as to where the garbage and
dead animals should be dumped. The city scavenger
was to provide his own dumping ground, and did so. Ap-
pellant had adopted no ordinance or resolution whatever
retaining any control over the city scavenger, as to how
he should dispose of his garbage and dead animals found
within the city limits. That was left entirely to him.
There was no evidence to show that appellant either ap-
proved or disapproved of the dumping ground selected
by the city scavenger. The only control whatever appel-
lant exercised over the scavenger in his work was to fix
the prices which were to be paid by the property owners
and by the city. Nor was there any evidence showing,
or tending to show, that the city scavenger was unfit for
the duties of his employment.

We are unable to distinguish this case, in principle,
from *City of Gulfport* v. *Shepperd*, 116 Miss. 439, 77 So.
193. In that case, the city of Gulfport had adopted an
ordinance providing for the keeping of the city in proper
sanitary condition. For a statement of that case, we
copy from the opinion as follows:

"Among other sections of this ordinance was a provi-
sion providing for the cleaning of cesspools outside of
the fire limits of the city by the city sanitary contractor,
and that the owner or occupant of the premises should
pay to this contractor the sum of three dollars for the
cleaning of the cesspool. It is also provided that these
cesspools shall be inspected at certain times, and that
they shall be kept in a sanitary condition. The sanitary
contractor, or other person designated by the mayor and
board of aldermen, shall demand of the owner or occu-
pant the payment of this fee, and, if he refuse to pay
the same, affidavit shall be made against him. There is
a book kept at the police station in which citizens may
register their complaints and requests on the sanitary
contractor to do the sanitary work. It is also made the
duty of the sanitary officers of the city to examine this
book twice a day and look after the complaints and re-

quests. The sanitary work done by the sanitary contractor shall be done under the immediate direction of the city sanitary inspector, who acts under the direction of the city health officer and the ordinances of the city. It is provided that the sanitary inspector shall see that the sanitary work is done in a proper manner, and shall direct the cleaning of those premises which need cleaning. It is further provided that the mayor and board of aldermen once a year shall receive bids and let out to the lowest and best bidder for the term of one year the exclusive privilege of cleaning and disinfecting· privies and cesspools or premises in the city outside of the fire district. The prices for doing this work are also fixed by the ordinance. The person to whom the contract for this sanitary work is awarded shall be known as the sanitary contractor, and it is made his duty to inspect the premises of citizens of the city outside of the fire district for the purpose of ascertaining and determining the sanitary condition of the same and to clean all privies and cesspools. This sanitary contractor is required to enter into a bond in the sum of five hundred dollars, to be approved by the mayor and board of aldermen, conditioned to properly and faithfully perform all the duties according to the terms of his contract. In addition to the cleaning of cesspools on private property, he also does certain work for the city in removing garbage and trash from the streets. It is also made unlawful for any other persons than the sanitary contractor to engage in the business of cleaning privies, cesspools, and premises for the public. Under the above ordinance the contract for the period in question here for doing the sanitary work was let to one Dave Currie. The cesspool was cleaned by a negro hired by Currie to do the work. Currie testified that after the work was done he inspected the same, and it was all right. His testimony, however, was contradicted by that of the plaintiff, and the jury settled the fact adversely to the contention of Currie and decided that the work was improperly or negligently performed."

The court held in that case that the city of Gulfport was not liable for the injury complained of, putting its decision on two distinct grounds: (1) That there was no liability because the city was exercising a governmental and not a corporate, function; and (2) that the person · whose negligence caused the injury in that case was an independent contractor. With reference to the latter ground of decision, the court said:

"In the cleaning of the cesspool of the appellee, the remuneration was to go solely to the contractor. The city, further than to see that his work was properly done, in no way attempted to supervise the details of the doing of the work. These details were left altogether to the party doing the work. The ordinance in effect only gives an exclusive privilege or license to the city sanitary contractor to do this character of work for the householders. He must do it in a proper manner as regards especially the general results, *viz.* it must be done in a sanitary way, but the actual details of how he performs the work are not in any way attempted to be interfered with or supervised by the city. In this case he was an independent contractor doing the work for the benefit of the owner or occupier of the house under the city ordinance, and the city is not responsible for his negligence."

If the city scavenger, in the present case, was an independent contractor, it is wholly immaterial whether appellant, in providing for the disposition of garbage, and dead animals, was acting in its governmental, or in its private corporate capacity. In either case, there would be no liability on the part of appellant for the damage done appellee's land by the scavenger in the performance of his work. The selection of the dumping ground would not be the act of appellant, but the act of the scavenger, the independent contractor, for which the latter alone would be liable to any person thereby injured.

We see no escape under the undisputed facts of this case from holding that the city scavenger was as much an independent contractor as the sanitary contractor was

in the Shepperd case. Knowledge on the part of the city authorities that the city scavenger was trespassing on appellee's property did not make the appellant liable; nor did the fact that, when appellee made complaint to the mayor of what was being done, the latter undertook to stop the practice. The mayor could not bind appellant in that manner. He had no right to direct the scavenger where to dump the garbage and dead animals.

It follows from these views that the court should have directed a verdict in appellant's favor.

*Reversed, and judgment here for appellant.*